UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RYAN VICTOR KUPRES,

                Petitioner,

                                Case No. 1:18-cv-807

v.

                                  Honorable Paul L. Maloney

GREG SKIPPER,

                Respondent.

_____/

## <u>OPINION</u>

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**<u>Discussion</u>**

I.     <u>Factual Allegations</u>

Petitioner Ryan Victor Kupres is incarcerated with the Michigan Department of Corrections at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Following a jury trial in the Ottawa County Circuit Court, Petitioner was convicted of first-degree child abuse, Mich. Comp. Laws § 750.136b(2). On April 15, 2013, the court sentenced Petitioner to a prison term of 180 to 270 months.

On July 17, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on July 17, 2018. (Pet., ECF No. 1, PageID.17.)

The petition raises seven grounds for relief, as follows:

I.     DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BY COUNSEL'S FALURE TO SECURE EXPERT MEDICAL WITNESS TO CHALLENGE AND CLARIFY PROSECUTION EXPERT'S DENIGRATING CAUSATION CONJECTURES AND BY COUNSEL'S FAILURE TO CONDUCT ADEQUATE BASIC PRE-TRIAL RESEARCH AND FAILURE TO ADEQUATELY ARGUE THE IMPORTANCE TO PRECLUDE THE ADMISSIBILITY OF PRIOR BAD ACTS.

II.     APPELLATE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE BY FAILING TO RAISE THE EGREGIOUS SHORTCOMINGS OF TRIAL DEFENSE COUNSEL AND BY FAILING TO INFORM HIS CLIENT OF HIS RIGHT AND OPTION OF A STANDARD 4 SUPPLEMENTAL BRIEF S[O] AS TO RAISE THIS ISSUE.

III.     THE PETITIONER'S CONVICTION WAS PREMISED SOLELY ON PROPENSITY IN DIRECT VIOLATION OF 404(b) RULES AND DUE TO INSUFFICIENT CREDIBLE EVIDENCE EXISTING TO PROVE DEFENDANT WAS GUILTY OTHERWISE.

IV.     THE TRIAL COURT DENIED PETITIONER A FAIR TRIAL AND HIS DUE PROCESS RIGHTS BY ALLOWING 404(b) TESTIMONY THEN BY FAILURE TO ENSURE PROPER USE OF PRIOR ACTS EVIDENCE

BY THE PROSECUTION, AND DEPARTING FROM THE
SENTENCING GUIDELINES.

V.     THE JUDGE COMMITTED REVERSIBLE ERROR BY IMPOSING AN
INORDINA[TE] SENTENCE BEYOND THE PALE OF MINIMUM
IMPOSITION PURSUANT TO THE GUIDELINES.

VI.     THE PETITIONER'S SENTENCE WAS INVALID BECAUSE IT WAS
PREDICATED ON SPECIOUS INFORMATION WHEREBY,
RENDERING ITS OUTCOME SPURIOUS.

VII.     THE GUIDELINE SCORING WAS FACTORED ON ERRONEOUS
INAPPLIABLE TOUCHSTONES, THUS, MANDATING
RESENTENCING.

(Br. in Supp. of Pet., ECF No. 2, PageID.26; *see also* Pet., ECF No. 1, PageID.5, 7, 8, 10, 12-14.)

The Michigan Court of Appeals summarized the facts underlying Petitioner's

conviction, as follows:

The five-month-old victim was admitted to the hospital on the night of
March 30, 2012 after she went limp and became unresponsive while in defendant's
care. Medical tests revealed that the victim had two serious brain injuries involving
subdural hemorrhages, a spinal injury, retinal hemorrhaging, and fractures to each
of her arms and legs. Neither defendant nor anyone else provided the doctors with
a plausible explanation for how the victim sustained her injuries.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.118.) Petitioner defended the charge by denying any

abuse and by arguing that, because other caregivers had access to the child, the prosecutor could

not prove the identity of the abuser. Petitioner strenuously objected to the trial court's admission

of evidence that, in 2008, while in Petitioner's care, another of Petitioner's children (his infant

son) had suffered multiple brain injuries involving subdural hemorrhaging, five bone fractures to

his legs, and retinal hemorrhaging. Following a four-day jury trial, Petitioner was convicted of

first-degree child abuse.

Petitioner appealed his conviction to the Michigan Court of Appeals, raising habeas

Grounds III through VII. In an unpublished opinion issued on September 25, 2014, the court of

appeals rejected all appellate grounds and affirmed the conviction and sentence. (9/24/14 Mich.

Ct. App. Op., ECF No. 2-1, PageID.118-126.) Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same five grounds. On April 28, 2015, the supreme court ordered the case held in abeyance pending the decision in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). (*See* 4/28/15 Mich. Order, ECF No. 2-1, PageID.129.) Following disposition of the *Lockridge* case, the Michigan Supreme Court concluded that Petitioner had failed to make a threshold showing of plain error under *Lockridge* and denied the application for leave to appeal. (10/28/2015 Mich. Order, ECF No. 2-1, PageID.146.) Petitioner moved for reconsideration, which the supreme court granted on October 26, 2016, again ordering the case held in abeyance, this time for resolution of *People v. Steanhouse* and *People v. Masroor*, 902 N.W.2d 327 (Mich. 2017). Following issuance of the decision in *Steanhouse/Masroor*, the supreme court again considered Petitioner's application for leave to appeal and again denied it. (10/3/17 Mich. Order, ECF No. 2-1, PageID.147.)

During the pendency of his direct appeal, Petitioner filed a motion for relief from judgment in the Ottawa County Circuit Court, raising the issues presented as Grounds I and II of this habeas petition. In an opinion and order issued on September 27, 2016, the trial court denied the claims on the merits. (9/27/16 Cir. Ct. Op. & Order, ECF No. 2-1, PageID.171-177.) Petitioner sought leave to appeal to the Michigan Court of Appeals, raising the same two grounds. The court of appeals denied leave to appeal on April 25, 2017. (4/25/17 Mich. Ct. App. Order, ECF No. 2-1, PageID.127.) Petitioner attempted to file an application for leave to appeal to the Michigan Supreme Court, but it was rejected as untimely. (10/27/17 Mich. Ct. Letter, ECF No. 2-1, PageID.148.)

II.    AEDPA Standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III. <u>Ground IV: Denial of Fair Trial by Admission of 404(b) evidence</u>

In Ground IV of his habeas application, Petitioner argues that the trial court improperly admitted evidence that Petitioner abused his infant son in 2008 to prove that he abused his infant daughter in 2012. Petitioner contends that the admission of the evidence violated Mich. R. Evid. 404(b) and deprived him of due process.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000). Petitioner has not met this difficult standard.

There exists no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence. In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because

it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Because there was no constitutional violation in the admission of evidence of other bad acts, the state court decision was "far from" an unreasonable determination of the facts in light of the evidence presented. *Clark v. O'Dea*, 257 F.3d 498, 502 (6th Cir. 2001); *see also Bugh*, 329 F.3d at 512.

IV.     Ground III:  Sufficiency of the Evidence

Petitioner argues that the prosecution introduced insufficient evidence to support his conviction. Petitioner's argument largely turns on his contention that the court should not have admitted evidence of other acts under Mich. R. Evid. 404(b). However, as previously discussed, the state court did not commit constitutional error in admitting the evidence of Petitioner's prior first-degree child abuse conviction. Thus, this Court must consider Petitioner's claim based on the entirety of the evidence at trial.

Petitioner contends that the evidence was insufficient to prove that the infant's injuries were caused by child abuse and that he was the person who committed the child abuse. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and the AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals addressed Petitioner's claim, as follows:

"[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Moreover, "when reviewing claims of insufficient evidence, this

Court must make all reasonable inferences and resolve all credibility conflicts in favor of the jury verdict." *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). "Circumstantial evidence and reasonable inferences arising therefrom can sufficiently establish the elements of a crime." *People v Schultz*, 246 Mich App 695, 702; 635 NW2d 491 (2001).

"A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." MCL 750.136b(2). The child abuse statute defines "[s]erious physical harm" as "any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald or severe cut." MCL 750.136b(1)(f). Further, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

While defendant appears to only challenge his identity as to the perpetrator of the victim's injuries, we find the evidence was sufficient to support the existence of all the elements of the crime beyond a reasonable doubt. Dr. Sarah J. Brown testified as an expert in pediatric child abuse that the victim's injuries "were definitely abusive trauma" and that they indicated "severe" whiplash injuries likely caused by someone shaking the victim "very violently." Further, the victim's head and spinal injuries occurred within 48 hours of the victim's March 31, 2012 MRI, and her bone fractures "were definitely more than seven days old" at the time of the victim's March 31, 2012 x-rays. At trial, defendant testified that he did not dispute any of Dr. Brown's medical findings. Thus, the prosecution presented sufficient evidence to support a conclusion that someone caused the victim to suffer "serious physical harm." MCL 750.136b(1)(f); MCL 750.136b(2).

Defendant's identity was established beyond a reasonable doubt as well. The victim's mother testified that she observed a fresh bruise on the victim's face when defendant transferred the victim to her on March 17, 2012. Defendant told mother that the victim bruised her own face by pinching herself. The record also indicates that the victim had a notable bruise on her neck after mother picked the victim up from defendant's residence on March 19, 2012. When confronted about the new bruise, defendant told mother that he witnessed the victim pinch herself and cause the bruise. At trial, Dr. Brown reviewed a March 19, 2012 photograph of the victim's neck bruise and testified that a child of the victim's age could not pinch herself hard enough to cause the bruise. The victim's aunt testified that while she babysat the victim on March 21, 2012, the victim became upset and recoiled from defendant when he attempted to hold her. The record established that mother left the victim in defendant's care for approximately 1- 1/2 hours on the evening of March 30, 2012. While in defendant's care, the victim vomited on herself, went limp, and became non-responsive. Dr. Brown testified that the victim most likely went limp soon after suffering a head trauma. At the hospital, defendant told Dr. Brown that the victim's injuries may have occurred during a March 25, 2012 bath when she purportedly hit her head against defendant's knee and later hit her leg

against the bathtub. However, the victim's paternal grandmother testified that she was present for all but possibly 15 to 30 seconds of the March 25, 2012 bath and did not witness the victim hit her head or her leg. Significantly, Dr. Brown testified that defendant's account of the March 25, 2012 bath could not have caused any of the victim's injuries.

Mother and the paternal grandmother testified that they did not cause the victim's injuries and defendant testified that he did not observe mother, the grandmother, or anyone else injure the victim. According to defendant, he did not abuse the victim and he did not know how the victim sustained her injuries. The prosecution presented evidence, however, that in 2008, defendant's infant son, while in defendant's care, suffered multiple brain injuries involving subdural hemorrhaging, five bone fractures to his legs, and retinal hemorrhaging. Dr. Debra N. Simms and Detective Thomas Knapp testified that defendant had initially offered a non-abusive explanation for his son's injuries, but when defendant was informed that his explanation was inconsistent with medical tests, he admitted that he had shaken his son in frustration and that this shaking was the likely cause of his son's brain injuries.

The jury's verdict in this case demonstrates that the jury did not find defendant's testimony credible. "Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony." *Wolfe*, 440 Mich at 515 (quotation omitted). Further, although the prosecution did not present any direct evidence establishing defendant's identity at the victim's abuser, "[c]ircumstantial evidence and reasonable inferences arising therefrom can sufficiently establish the elements of a crime." *Schultz*, 246 Mich App at 702. The evidence established defendant's identity as the perpetrator where the victim previously was injured in defendant's care, defendant provided information about the cause of those injuries that was refuted by medical testimony, defendant previously injured a child and gave false information as to the cause of that child's injuries, the injuries of both children were substantially similar, the victim suffered some sort of head trauma while in defendant's care and went limp in his arms, and defendant's own mother refuted defendant's testimony as to how the victim may have been injured – thus, fortifying defendant's lack of credibility.

Moreover, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). Thus, viewing "the evidence in a light most favorable to the prosecution," the prosecution presented sufficient evidence from which a rational jury could determine beyond a reasonable doubt that defendant intentionally or knowingly caused the victim to suffer serious physical harm. *Wolfe*, 440 Mich at 515. Accordingly, the prosecution presented sufficient evidence to allow the jury to find defendant guilty of first-degree child abuse.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.118-120.)   Although the court of appeals did not directly cite federal constitutional law, its decision rested on *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992), which expressly applied *Jackson v. Virginia* as the standard of review applicable to challenges to the sufficiency of the evidence.  *Wolfe*, 489 N.W.2d at 751 (citing *Jackson*, 443 U.S. 307).

Moreover, the court of appeals' application of the *Jackson* standard was patently reasonable.  The court of appeals made extensive factual findings concerning the evidence introduced at trial.  State court factual determinations, whether by the trial or appellate courts, are presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656; *Sumner*, 449 U.S. at 546.  Petitioner fails to seriously dispute the facts relied upon by the appellate court – much less to provide clear and convincing evidence that would rebut those findings.  He merely argues that the prosecutor's evidence did not entirely eliminate the possibility that other individuals contributed to the injuries.  He also argues that the expert's opinion that the injuries to the brain and spine were caused by shaking or whiplash should not be believed, because the expert also acknowledged that she would have expected to see bleeding from such injuries on both sides of the brain, which she did not find here.

Such arguments do not constitute evidence, much less clear and convincing evidence, sufficient to rebut the presumption of correctness accorded findings of the court of appeals.  Instead, they amount to nothing more than a claim that the jury should not have believed the expert's conclusions.  However, it is the trier of fact's responsibility to resolve such conflicts in testimony.  *Jackson*, 443 U.S. at 319.  And this Court owes deference to both the jury's determinations and the court of appeals' decision upholding those determinations. *Tucker*, 541

F.3d at 656. Petitioner's arguments utterly fail to overcome the double deference owed to the state-court finding that the injuries were caused by child abuse.

Petitioner next argues that the evidence supporting his identity as the abuser was strictly circumstantial. The Supreme Court has never held that a criminal conviction based solely on circumstantial evidence violates due process. Indeed, the Court long has recognized that the law treats circumstantial and direct evidence the same, and it has held that circumstantial evidence alone may be sufficient to support a criminal conviction on proof beyond a reasonable doubt. *Holland v. United States*, 348 U.S. 121, 140 (1954) (observing that, in criminal cases, circumstantial evidence is "intrinsically no different from testimonial evidence"); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 329 n.14 (2009) (observing that the confrontation concerns about introduction of drug analyst's report "in no way alters the type of evidence (including circumstantial evidence) sufficient to sustain a conviction").

Further, as previously discussed, the trial court's decision to admit evidence about Petitioner's prior first-degree child abuse conviction is not reviewable in these proceedings. Moreover, even if it were, Petitioner's abuse of another of his infant children, which resulted in injuries highly similar to those present in the instant case, was extremely relevant in the instant case for purposes other than propensity. The evidence that Petitioner had initially denied his prior abuse and later admitted shaking the child undermined any notion that Petitioner mistakenly or accidentally caused the injuries. Petitioner's initial denials in that case also undermined his credibility when he testified. And the similarities in the cases made Petitioner's prior conduct relevant on the issue of a common plan or scheme in the manner in which Petitioner treated his infant children. Taken together with the other evidence – the timing of the injuries and symptoms in light of the medical evidence; the absence of evidence of any other person engaging in abuse;

the fact that the mother had repeatedly confronted Petitioner about bruises and had documented those bruises; the report that the infant had recoiled from Petitioner's touch; and the implausible excuses made by Petitioner – the evidence was more than sufficient to support Petitioner's conviction.

In sum, the state court's rejection of Petitioner's third habeas ground was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. He therefore is not entitled to relief on his third habeas ground.

### V. Grounds V, VI, & VII: Alleged Sentencing Errors

Petitioner raises a number of overlapping sentencing claims in Grounds V, VI, and VII of his habeas petition. In his fifth habeas ground, Petitioner argues that the trial court committed reversible error under Michigan law by departing upward from the minimum sentencing range as calculated under the sentencing guidelines. Petitioner also contends that the departure rendered his sentence disproportionate under *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990). In addition, he asserts that the court based its sentencing decision on facts found by the court rather than the jury, in violation of Petitioner's due process and Sixth Amendment rights. In Ground VI, Petitioner argues that the sentence was invalid because it was based on inaccurate information, in violation of the Due Process Clause. He also reiterates the argument made in Ground V – that the court based its sentence on facts not found by the jury or admitted by Petitioner. Finally, he contends that OV 7 and OV 13 were improperly scored. In Ground VII, Petitioner argues that, because proper scoring of the contested guidelines would result in a lower minimum sentence range, he is entitled to resentencing. He argues that resentencing should occur

before a different judge, as the sentencing judge indicated at the sentencing hearing that he would have sentenced Petitioner to the same sentence, even if the guidelines were scored differently.

Petitioner argues that OV 7 and OV 13 were misscored. OV 7 requires the scoring of 50 points for aggravated physical abuse, and 0 points if such aggravated abuse does not exist. *See* Mich. Comp. Laws § 777.37. A finding of aggravated physical abuse should be made if

> A victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the rear and anxiety a victim suffered during the offense.

*Id.* Petitioner argues that, giving the words their dictionary meanings, he did not exhibit sadism and did not torture the victim. He also argues that no excessive brutality was demonstrated beyond the amount necessary to cause injury sufficient to demonstrate a violation of the statute.

OV 13 addresses continuing patterns of criminal behavior. Under the provision, points ranging from 0 to 50 may be assigned for varying patterns of criminal behavior. Mich. Comp. Laws § 777.43. Petitioner was scored 25 points on the variable under subsection (1)(c), because "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." *Id.* The variable requires the court to count "all crimes within a 5-year period, including the sentencing offense . . . ." Mich. Comp. Laws § 777.43(2)(a).

The Michigan Court of Appeals rejected both guideline-scoring claims, concluding that both variables were correctly scored:

> Defendant argues that the preponderance of the evidence did not support the trial court's scoring of OV 7. The trial court scored OV 7 at 50 points, finding that defendant treated the victim with sadism and excessive brutality. MCL 777.37(1)(a). MCL 777.37(3) defines "sadism" as "conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification." The statute does not define "excessive brutality," but we "presume that the Legislature intended for the words to have their ordinary meaning." *Hardy*, 494 Mich at 440. We have previously interpreted "excessive brutality" as meaning "savagery or cruelty beyond even the 'usual' brutality of a crime." *People v Glenn*, 295 Mich App 529, 533; 814 NW2d 686 (2012), rev'd on other grounds by *Hardy*, 494 Mich 430.

A conviction of first-degree child abuse requires a finding beyond a reasonable doubt that defendant caused "any physical injury to a child that seriously impairs the child's health or physical well-being, including, . . . brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald or severe cut." MCL 750.136b(1)(f). Here, the victim did not suffer a single qualifying physical injury under MCL 750.136b, but rather suffered multiple qualifying injuries on at least two separate occasions during March 2012. The victim's injuries hospitalized her for "several weeks," during which time she suffered seizures and had to be sedated and placed on a ventilator for seven or eight days. Dr. Brown testified that there was an area of the victim's brain where her brain cells were dying and she was "critically ill" in April 2012. The record supported the trial court's reasonable inference that defendant abused the victim as a self-gratifying reaction to his frustration with the victim. Given the number and severity of the victim's injuries, the trial court properly found that defendant committed "savagery or cruelty beyond even the 'usual' brutality of" first-degree child abuse, *Glenn*, 295 Mich App at 533, and engaged in conduct that subjected the victim "to extreme or prolonged pain" for the purpose of producing suffering or for defendant's gratification. MCL 777.37(3). Accordingly, the trial court did not err by scoring OV 7 at 50 points.[4]

Defendant also contends that the trial court should have scored OV 13 at zero points instead of 25 points. OV 13 directs the trial court to score 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "In scoring OV 13, 'all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction.'" *People v Nix*, 301 Mich App 195, 205; 836 NW2d 224 (2013), quoting MCL 777.43(2)(a). MCL 777.43(1)(c) does not limit the "trial court's ability to score more than one instance arising out of the same criminal episode." *People v Gibbs*, 299 Mich App 473, 488; 830 NW2d 821 (2013). Thus, "multiple concurrent offenses arising from the same incident are properly used in scoring OV 13[.]" *Id.* at 487-488. Here, the trial court scored OV 13 at 25 points on the basis that defendant abused his son on two separate occasions in 2008 and that he abused the victim on two separate occasions in March 2012. Dr. Brown's testimony established that the victim suffered bone fractures approximately one or more weeks before she suffered her head and spinal injuries. Dr. Simms testified that the brain injury suffered by defendant's son indicated that he suffered head trauma on two separate occasions. Thus, the preponderance of the evidence supported that the sentencing offense "was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Accordingly, the trial court did not err by scoring OV 13 at 25 points.

[4] The record indicates that the trial court also found that defendant's conduct was designed to increase the victim's fear or anxiety. MCL 777.37(1)(a). We need not address this finding in light of our holding regarding the trial court's finding of sadism and excessive brutality.

(Mich. Ct. App. Op., ECF No. 2-1, PageID.123-124.)

Although Petitioner believes that the state court should have reached different conclusions on the sentencing variables, it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 131 S. Ct. at 14; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). Moreover, the decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). The Sixth Circuit repeatedly has recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).

Petitioner's sentence falls within the maximum prison term authorized by the state legislature, and the Michigan courts have determined that the scoring of OV 7 and OV 13 was

proper under Michigan law. Petitioner's challenge to the trial court's scoring of OV 7 and OV 13 therefore does not entitle him to habeas relief.

For similar reasons, Petitioner's claim that the trial court improperly departed upward from the sentencing guidelines is not cognizable in this proceeding. Petitioner argues that the court lacked a "substantial and compelling reason" for its upward departure, as required by Mich. Comp. Laws § 769.34(3). *See also People v. Babcock*, 666 N.W.2d 231, 242-43 (Mich. 2003) (discussing review of sentencing departure for "substantial and compelling" reasons); *People v. Fields*, 528 N.W.2d 176, 184 (Mich. 1995) (holding that, to be "substantial and compelling," the factors relied on for departure must be "objective and verifiable"). Once again, Petitioner asks this Court to review a state court's application of its own sentencing laws. Such claims are not cognizable on habeas review, and this Court is bound by the court of appeals' denial of Petitioner's claim.

To the extent Petitioner intends to suggest that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *Babcock*, 666 N.W.2d at 236. It is plain that *Milbourn* was decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error

of state law. *See Wilson*, 131 S. Ct. at 14; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, to the extent that Petitioner intends to suggest that his sentence was disproportionate under the Eighth Amendment, his claim is without merit. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Further, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Petitioner also fails to demonstrate that his sentence violated due process because it was based on false information. A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980);

*see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447. Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner simply reargues his claim that the court should have reached a different result when scoring OV 7 and OV 13. Such a claim utterly fails to demonstrate that the court relied on inaccurate information.

Petitioner next argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process, by using, to mandatorily enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 US 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under

which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments and reiterated the rule that any fact that increased the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303). Petitioner invokes this line of authority in challenging his sentence as violative of his Sixth and Fourteenth Amendment rights.

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing Mich. Comp. Laws § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing Mich. Comp. Laws § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

Subsequently, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a statutorily prescribed mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845

N.W.2d 533, 539 (Mich. App. 2013). The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 (6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

However, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held to the contrary. The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under *Alleyne*. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional. The Court's remedy was to make the guidelines advisory only. *Id.* at 520-21.

The Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review. This Court may consider only the "clearly established" holdings of the United States Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. For the same reasons, it may not consider the holdings of the state courts. Instead, this Court may only grant relief on habeas review if the state court's application

of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists can and do disagree about whether *Alleyne* applies to the calculation of Michigan's minimum sentencing guidelines. *Alleyne* therefore did not clearly establish the unconstitutionality of the Michigan sentencing scheme.

Moreover, even if this Court were to apply *Lockridge*, Petitioner would not be entitled to relief. As the Michigan Supreme Court undoubtedly concluded when denying Petitioner's application for leave to appeal, *Lockridge* does not warrant a different sentencing result in the instant case. Petitioner's minimum sentence was not mandatorily dependent on impermissible judicial factfinding. Here, as in *Lockridge* itself, "[b]ecause [Petitioner] received an upward departure sentence that did not rely on the minimum sentence range from improperly scored guidelines (and indeed, the trial court necessarily had to state on the record its reasons for *departing* from that range), [Petitioner] cannot show prejudice from any error in scoring the OVs in violation of *Alleyne*." *Lockridge*, 870 N.W.2d at 522. Instead, the court merely exercised its discretion to set an indeterminate sentence with a minimum sentence higher than the guidelines range and a maximum established by statute. As a consequence, application of *Lockridge* makes no difference to the result.

Finally, because Petitioner fails to demonstrate constitutional error requiring resentencing, his argument in Ground VII – that he should be resentenced before a different judge – is moot.

In sum, the state court's rejection of Petitioner's many sentencing claims was not based on an unreasonable determination of the facts and was neither contrary to nor unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

VI.    Ground I:  Ineffective Assistance of Trial Counsel

Petitioner contends that his trial attorney committed ineffective assistance of counsel in a number of ways.  First, Petitioner contends, trial counsel was ineffective in failing to investigate and secure an expert witness on the issue of causation of the victim's injuries.  Second, he suggests that trial counsel was ineffective in failing to effectively argue against the admission of other acts evidence under Mich. R. Evid. 404(b).  Third, he alleges, counsel failed to thoroughly investigate the other witnesses, many of whom spent more time with the child than Petitioner, for conditions such as post-partum syndrome.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see*

*also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

### A.    Failure to Challenge Other Acts Evidence

Petitioner argues that trial counsel was ineffective for failing to challenge the admission of other acts evidence under Mich. R. Evid. 404(b). His claim is frivolous for multiple reasons.

First, as the trial court held when denying the motion for relief from judgment,

the prosecution filed a pre-trial motion asking that the Court admit certain prior bad acts evidence. Defendant's trial counsel appeared at the hearing on the motion and challenged the admission of said evidence. The Court found the evidence to be admissible under MRE 404(b).

(Cir. Ct. Op. & Order Den. Mot. for Relief from J., ECF No. 2-1, PageID.172.) Thus, as a factual matter, counsel did not fail to challenge the evidence; he strenuously opposed its admission.

Second, as previously discussed, admission of the other acts evidence did not amount to constitutional error, and both the state trial and appellate courts found the evidence admissible under state law. As this Court previously has noted, "'a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76). Because the evidence was admissible under state law, any further objection would have been futile. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

For both reasons, Petitioner fails to demonstrate that trial counsel was ineffective in addressing the admission of other acts evidence.

## B. Failure to Investigate

Petitioner argues that trial counsel was ineffective in failing to investigate and hire an expert on the cause of the child's injuries, which, he argues, could have been from accident, the stress of vomiting, or the actions of another person. He also argues that counsel failed to investigate other witnesses for conditions such as postpartum depression, because "there are countries that take this condition so seriously, that women are put on probation for the first year after giving birth, so as to monitor their 'mood-swings' and intervene if necessary." (Br. in Supp. of Pet., ECF No. 2, PageID.58.)

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland*, 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit

has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

Applying *Strickland* and setting forth the applicable standard of review, the trial court rejected Petitioner's arguments, as follows:

> The duties of defense counsel include "the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. at 690-691. "Criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence." *Harrington v. Richter*, 562 U.S. [86, 106-108] (2011). For this reason, the duty of defense counsel to make reasonable investigations includes the duty to determine whether or not to retain the services of an expert witness. *Hinton v. Alabama*, ___ US ___; 134 S Ct 1081; 188 L Ed 2d 1 (2014).[5] While counsel's selection of an expert witness may be a "paradigmatic example" of trial strategy, this is only so when the selection is

made "*after* thorough investigation of [the] law and facts." *People v. Ackley*, 497 Mich 381, 390; 870 NW2d 858 (2015) (quoting from *Hinton*, 188 L Ed 2 at 10 (emphasis in *Ackley*).[6]

Defendant suggests that trial counsel should have consulted a variety of experts in the following areas, "injury trauma[,"] "postpartum syndrome[7][,"] and "history check," because the prosecution witnesses should have been treated as suspects. Defendant does not clarify what these experts would have offered regarding these "suspects" or their psychological make-up. Further this Court knows of no authority, and none has been cited by defendant, where a prosecution witness has been required to undergo a psychological examination or have their medical records opened at the request of a defendant for general discovery purposes. These arguments are without merit.

Defendant, relying on *Ackley*, also complains that his attorney should have consulted with an expert regarding the nature of the victim's injuries. In *Ackley*, defendant was convicted by a jury of first-degree child abuse. There were no witnesses to the acts that caused the child's injuries and death. Therefore, there was no direct evidence of causation. To prove causation, the prosecution called five medical experts, each of whom testified that the child had died as the result of nonaccidental shaking, blunt force trauma, or a combination of both. The defendant denied hurting the child and stated that the child's injuries and death were the result of an accidental fall – he testified that he found the unconscious child on the floor in the child's bedroom. Defense counsel failed to call an expert witness to substantiate defendant's theory of causation. The Michigan Supreme Court concluded that defense counsel ". . . performed deficiently by failing to investigate and attempt to secure an expert witness who could both testify in support of the defendant's theory that the child's injuries were cause by an accidental fall and prepare counsel to counter the prosecutions expert medical testimony." *People v. Ackley*, 497 Mich at 389.

The facts and circumstances in our case are substantially different than those in *Ackley*:

- *Ackley* involved one area of trauma, limited to the head. In our case the child suffered multiple injuries to several body areas including a subdural hemorrhage to the left side of the brain; brain damage; two fractured arms; two fractured knees; two fractured shoulders; injured left eye; injured spinal cord; and bruises to her knees, back, jaws, and neck.

- *Ackley* involved an accidental explanation for the ONE head injury – short-fall death (falling out of bed occurring after a fall from a trampoline) vs. shaken baby syndrome (SBS). Our case involved a reasonable doubt defense based on the theory that the defendant was not alone with the child during the relevant time frame; hence, he could not have injured the child.

- In *Ackley*, there was an affidavit from a medical expert opining that the injuries sustained by the child were consistent with a short-fall death, not SBS. In our case, no medical evidence has been presented, nor has any medical theory been advanced which would establish any ground to conclude that anything but non-accidental trauma caused the victim's several and severe injuries.

- In *Ackley* there was evidence the child, a toddler, suffered a head injury when she fell off a trampoline, had gone unconscious and complained of headaches in the days before her death. In our case, there is no evidence of any accidental traumatic injury which could have caused the myriad of injuries sustained to this 5 month old baby who slept in a crib. Nor was the child in our case found unconscious on the floor or away from the crib.

- In *Ackley*, there was evidence from the child's pediatrician which rebutted the prosecution's theory. However, defense counsel never called the pediatrician at trial. In our case, noting has been presented to this Court that trial counsel ignored or overlooked existing relevant medical records.

Defendant in the case at bar[] fails to offer any explanation for the victim's injuries. Rather, his defense was one o[f] reasonable doubt by pointing the finger of blame to others. This case was a classic credibility issue. Therefore, defendant fails to offer a theory of causation that could have been supported by expert testimony. By contrast, in *Ackley*, the defendant offered a theory of causation – central to the defense – that could have been supported by expert testimony had defense counsel simply done his job.

As mentioned above, there was an assertion in *Ackley* that the victim had fallen out of bed. A witness made a statement that the victim had fallen off a trampoline, struck her head, briefly gone unconscious, and had been complaining of headaches in the days leading up to her death. Dr. Werner Spitz, a well-known expert in forensic pathology, after reviewing the autopsy report, postmortem photographs, and the trial transcripts, state in his affidavit that the bruises on the victim's body were consistent with the intubation and CPR that victim had received on the day of her death.

To repeat, defendant in the case at bar fails to offer a theory of causation that could have been supported by expert testimony. That is fatal to defendant's position. Further, defendant fails to offer any evidence or argument based on medical literature that suggests that his trial counsel's pre-trial investigation was not reasonable. Some evidence, theory or logical argument is required to establish the need for further evidentiary hearings. See MCR 2.119(B)(1)(b). This Court cannot conclude the defense counsel's performance was constitutionally deficient because of counsel's failure to call an expert witness at trial.

Concededly, *Ackley* teaches that there are two reasons why the Sixth Amendment requires that defense counsel conduct an adequate pre-trial investigation. First, an adequate pretrial investigation may locate an expert who is

willing to testify in support of defendant's theory of the case. Second, an adequate pre-trial investigation will prepare counsel to counter the prosecution's expert testimony. However, where the theory of the case is one of reasonable doubt – a credibility contest – and where defendant has not and is not advancing any non-abusive explanation for the injuries, any failure to find and consult with an expert is not prejudicial.[8]

[5] In *Hinton*, while finding that trial counsel's inadequate pre-trial investigation satisfied the deficient performance prong of Strickland, the Court remanded the case for a determination of whether or not counsel's deficient performance satisfied the prejudice prong. *Hinton v. Alabama*, 188 L Ed 2d at 11.

[6] In *Ackley*, the Michigan Supreme court found that counsel's insufficient pre-trial investigation satisfied not only the deficient performance prong of *Strickland* but also the prejudice prong. *People v. Ackley*, 497 Mich at 394-397.

[7] Defendant seems to suggest that all mothers should be placed on state sponsored monitoring for a year after giving birth in order to ensure that the newborn is not harmed. He goes on to state that this is the norm is some "countries." If nothing else, this concept is Kafkaesque. This suggestion is also inconsistent with the balance of his argument – that there might have been a non-criminal explanation for the child's injuries.

[8] There is no indication that any medical expert would opine that a subdural hemorrhage to the left side of the brain; brain damage; two fractured arms; two fractured knees; two fractured shoulders; injured left eye; injured spinal cord; and bruises to here knees, back, jaws, and neck could be caused by anything other than abuse in the absence of a history of accidental trauma. In this case, there is NO [sic] evidence of accidental trauma, nor has defendant theorized based on any known facts that an accidental injury occurred. Defendant's argument on page 9 of his brief that trial counsel "repeatedly" referred to accidental injuries is not supported by the record. The Court also notes that the fractures were in various stages of healing.

(Cir. Ct. Op. & Order, ECF No. 2-1, PageID.173-176.)

The trial court's determination of Petitioner's claim was patently reasonable. Petitioner offers an entirely theoretical claim that an expert might have testified that the victim's multiple injuries, which had been inflicted on a series of occasions, were the result of an unknown accident that none of the infant's caregivers could identify. As the trial court recognized, a court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim). "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of

reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689).

Moreover, as the trial court indicated, Petitioner's theory about the need for an expert on postpartum depression is nonsensical. Petitioner offers no factual basis for assuming that all women experience postpartum depression and must be watched for abusive behavior for a one-year period after delivering a child. And Petitioner does not even suggest that the victim's mother suffered from postpartum depression. Petitioner therefore wholly fails to establish a basis for utilizing an expert on the disorder.

Petitioner next suggests that an expert should have been called to offer opinions on the psychological stability and history of each of the prosecution witnesses. As with his other arguments, Petitioner utterly fails to provide a factual basis for such a challenge. Petitioner identifies no known relevant psychological issues experienced by the witnesses that could have been the subject of such expert testimony. Petitioner merely speculates that something might have been found. In the absence of some evidence that counsel failed to uncover, Petitioner cannot overcome the presumption that counsel acted reasonably. *Titlow*, 571 U.S. at 23.

For all these reasons, given the lack of theory or evidence, Petitioner cannot overcome the double deference owed to the trial court's rejection of his claims of ineffective assistance of trial counsel.

VII. Ground II: Ineffective Assistance of Appellate Counsel

Petitioner contends that trial counsel was ineffective in failing to raise his claims of ineffective assistance of trial counsel on direct appeal. He also alleges that appellate counsel was ineffective in failing to inform Petitioner that he could file a pro se supplemental brief under Michigan Administrative Order No. 2004-6, Standard 4.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688. As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 259, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.*

Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal. *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal). Here, as previously discussed, Petitioner's claims of ineffective assistance of trial counsel are meritless and were properly denied by the state courts. Appellate counsel therefore was not ineffective in failing to raise on direct appeal a claim that trial counsel was ineffective.

To the extent that Petitioner argues that appellate counsel was ineffective in failing to inform Petitioner of his right to file a Standard 4 brief so that he could present his claim of ineffective assistance of trial counsel, the claim fails for similar reasons. Because the claim of

33

ineffective assistance of trial counsel was meritless, Petitioner cannot demonstrate that he suffered any prejudice by not being able to raise the claim on direct appeal.

For both reasons, the state-court denials of Petitioner's claims of ineffective assistance of appellate counsel constituted entirely reasonable applications of clearly established Supreme Court precedent.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a Judgment and Order consistent with this Opinion.


Dated:   August 17, 2018                        /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge